UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| MARIA DEL ROSARIO GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.    07 CV 06540 |
| v. | ) | |
| | ) | Judge Milton I. Shadur |
| BAUSCH & LOMB INC., and | ) | |
| WALGREEN CO., d/b/a WALGREENS, | ) | PLAINTIFF DEMANDS |
| | ) | TRIAL BY JURY |
| Defendants. | ) | |

## AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, MARIA DEL ROSARIO GOMEZ, by and through her attorneys, ROMANUCCI & BLANDIN, LLC, and complaining against Defendants, BAUSCH & LOMB INC. (hereinafter "BAUSCH & LOMB"), and WALGREEN CO., d/b/a WALGREENS (hereinafter "WALGREENS") states as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff, MARIA DEL ROSARIO GOMEZ, does and, at all times hereinafter mentioned, did reside in the City of Chicago, County of Cook, in the State of Illinois.

2.    At all times relevant herein, Defendant, BAUSCH & LOMB, INC., was organized and existed under and by virtue of the laws of the State of New York, with its principal place of business located at One Bausch & Lomb Place, Rochester, New York.

3.    At all times relevant herein, Defendant, WALGREENS, was organized and existed under and by virtue of the laws of the State of Illinois, with its principle place of business located in the City of Deerfield, Lake County, Illinois.

4.    Defendant, WALGREENS, has many locations in Cook County, State of Illinois. WALGREENS sold Defendant BAUSCH & LOMB's ReNu with MoistureLoc contact lens

solution to Plaintiff and to thousands of others within the State of Illinois in the regular course of its business.

5.    Defendant BAUSCH & LOMB, designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold ReNu with MoistureLoc contact lens solution (hereinafter "ReNu").

6.    ReNu was held out by Defendant BAUSCH & LOMB, to be a "multi-purpose solution for cleaning, rinsing, disinfecting, and storing your soft contact lenses." The Defendant further contended that, "ReNu Multi-Purpose Solution makes daily lens care easy."

7.    On or about February 17, 2006, BAUSCH & LOMB, suspended sales of ReNu in select Asian cities amidst an increase of incidents of *Fusarium* keratitis and requests by those cities' health officials to pull ReNu from the shelves.

8.    ReNu, upon information and belief, contains a defect in its chemical composition, which is either inherent to ReNu itself or a result from exposure to contaminants at the Greenville, South Carolina, manufacturing facility.

9.    On or about April 10, 2006, the U.S. Food and Drug Administration (FDA) and the CDC issued a press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight." The press release indicated further that, "some patients have reported a significant loss of vision, resulting in the need for a corneal transplant." The FDA reported that a fungus called *Fusarium* was the cause of the reported infections.

10.    On or about April 10, 2006, BAUSCH & LOMB announced the suspension of shipments of ReNu due to the reports of fungal keratitis infections.

11.     Three days later, on or about April 13, 2006, BAUSCH & LOMB requested that U.S. retailers remove ReNu from their shelves and suspend sales of the product.

12.     On or about November 23, 2005, Plaintiff, MARIA DEL ROSARIO GOMEZ, began to use the defective ReNu solution produced by BAUSCH & LOMB.

13.     On and after November 23, 2005, Plaintiff, MARIA DEL ROSARIO GOMEZ, purchased ReNu from Defendant, WALGREENS, for her personal use.

14.     As a direct and proximate result of her use of ReNu, Plaintiff, MARIA DEL ROSARIO GOMEZ, suffered a chronic fungal corneal ulcer, causing permanent injury for which future surgery in the right eye will be required.

15.     Had Defendant, BAUSCH & LOMB, properly disclosed the risks associated with ReNu and removed the defective product from store shelves in a timely manner, Plaintiff would not have purchased and used the product.

## COUNT I
### (Gomez v. Bausch & Lomb – Negligence)

1-15.   Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count I, as though fully stated herein.

16.     At all times material hereto, the Defendant, BAUSCH & LOMB, had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of ReNu.

17.     The Defendant breached its duty of reasonable care to Plaintiff in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold ReNu.

3

18.    Plaintiff's injuries and damages, as alleged herein, are the direct and proximate result of the carelessness and negligence on behalf of the Defendant.

19.    The Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

20.    As a proximate result of the aforementioned negligence of Defendant, Plaintiff MARIA DEL ROSARIO GOMEZ, suffered personal injuries and harm, and was required to pay for necessary healthcare, attention and services, along with additional incidental and related expenses to monitor her condition.

21.    The conduct of Defendant was negligent, in disregard for the consequences as to reveal an indifference to the clear risk of blindness, death or serious bodily injury.

22.    That at the aforesaid time and place, Defendant, BAUSCH & LOMB, individually and by and through its duly authorized agents, servants, and/or employees committed one or more of the following negligent acts and/or omissions:

      a.    Negligently created a defective product;

      b.    Failed to create a product, ReNu, to perform in accordance with the reasonable expectations of ordinary consumers;

      c.    Negligently knew or should have known of the defect;

      d.    Negligently concealed the defect from consumers and/or failed to disclose to consumers the defect;

      e.    Negligently designed, tested, marketed, manufactured, advertised, warranted, and sold ReNu;

      f.    Negligently failed to warn of specific proper storage conditions, including but not limited to, proper storage temperature;

      g.    Negligently breached its express warranties;

4

h.    Negligently breached implied warranties of merchantability;

i.    Negligently misrepresented the characteristics and qualities of ReNu;

j.    Negligently knew or should have known that ReNu could cause personal injury such a fungal keratitis, and failed to disclose the risk of physical harm;

k.    Negligently failed to timely suspend shipments of RuNu, when it knew or should have known of the risk of *Fusarium* infection associated with the product;

l.    Negligently failed to timely instruct suppliers and retailers of ReNu to pull the product from store shelves, when it knew or should have known of the risk of *Fusarium* infection associated with the product; and,

m.    Was otherwise negligent in its production of RuNu.

23.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expense in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, BAUSCH & LOMB, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

### COUNT II
**(Gomez v. Bausch & Lomb – Strict Liability)**

1-15.    Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count II, as though fully stated herein.

16.    Defendant, BAUSCH & LOMB, designed, developed, manufactured, tested,

packaged, advertised, promoted, marketed, distributed, labeled, and/or sold ReNu in a condition which rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

17.     The ReNu manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

18.     The ReNu manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design anchor formulation.

19.     Alternatively, ReNu supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

20.     The ReNu was defective and unreasonably dangerous when it left the possession of Defendant in that it contained writings insufficient to alert consumers, including Plaintiff, of the dangerous risks and reactions associated with ReNu, notwithstanding Defendant's knowledge of such risks and reactions.

21.     The aforementioned defects existed when Defendant placed ReNu into the stream of commerce.

22.     Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

23.     By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff.

24.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has

suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, BAUSCH & LOMB, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

### COUNT III
**(Gomez v. Bausch & Lomb – Breach of Express Warranty)**

1-15. Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count III, as though fully stated herein.

16. Defendant expressly warranted to Plaintiff that ReNu was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

17. At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which ReNu was used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

18. At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that ReNu was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

19. Plaintiff purchased and used ReNu for its intended purpose.

20. Plaintiff relied on Defendant's express warranties.

21.    Defendant breached said express warranties in that ReNu was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

22.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, BAUSCH & LOMB, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

**COUNT IV**
**(Gomez v. Bausch & Lomb – Breach of Implied Warranty)**

1-15.    Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count IV, as though fully stated herein.

16.    Defendant designed, manufactured, marketed, distributed, supplied, and sold ReNu.

17.    At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold ReNu, it knew of the use for which ReNu was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

18.    Plaintiff purchased and used ReNu for its intended purpose.

19.    Due to Defendant's wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with ReNu until after she used it.

8

20.    Contrary to the implied warranty for ReNu, ReNu was not of merchantable quality and was not safe or fit for its intended use and purposes.

21.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, BAUSCH & LOMB, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

## COUNT V
### (Gomez v. Bausch & Lomb – Misrepresentation)

1-15.    Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count V, as though fully stated herein.

16.    Defendant misrepresented the safety of ReNu and fraudulently, intentionally, recklessly, and/or negligently concealed material adverse information regarding the safety of the product when it had a duty to disclose such information to the consuming public, including to Plaintiff.

17.    Defendant made false or misleading statements and omissions about the safety of ReNu in its labeling, advertising, promotional materials, and other marketing efforts.

18.    Defendant actively concealed adverse information at a time when it knew, or should have known because of its superior position of knowledge, that ReNu was defective and posed a danger to the general public, including the Plaintiff.

19.     The facts misrepresented or not fully disclosed were material.

20.     Defendant made these misrepresentations with the intention that Plaintiff and the consuming public would rely on the misrepresentations or omissions in selecting ReNu for purchase and use.

21.     Defendant should have reasonably foreseen that Plaintiff was likely to rely on the facts misrepresented or not disclosed.

22.     Plaintiff reasonably relied on and was induced by Defendant's misrepresentations and/or active concealment in selecting and using the ReNu.

23.     Plaintiff sustained injuries and losses as a direct and proximate result of Defendant's misrepresentations or active concealment of information.

24.     As a direct and proximate result of Defendant's misrepresentation, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, BAUSCH & LOMB, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

## COUNT VI
### (Gomez v. Walgreens – Negligence)

1-15.   Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count VI, as though fully stated herein.

16.     That at all times relevant herein, Defendant, WALGREENS, was engaged in

the practice of retail sale, distribution, and/or supply of pharmaceutical products, including but not limited to, contact lens solutions, within the State of Illinois.

17.    That, in its regular course of business, Defendant, WALGREENS, supplied, distributed, and/or sold ReNu to its clients, customers, and/or consumers.

18.    At all times relevant herein, Defendant, WALGREENS, had a greater knowledge of the products it sold to consumers than the consumers themselves.

19.    That Defendant, WALGREENS, had a duty to exercise reasonable care in the sale, distribution, and/or supply of the ReNu solution it placed into the stream of commerce, including a duty to properly warn its customers of the dangers of the pharmaceutical products it sold, including ReNu contact lens solution.

20.    Defendant, WALGREENS, by and through its agents and employees, failed to warn Plaintiff, MARIA DEL ROSARIO GARCIA, of the dangers of ReNu contact lens solution, including but not limited to, the risk of *Fusarium* infection.

21.    On and after November 23, 2005, WALGREENS knew or should have known of the *Fusarium* contamination risk with ReNu.

22.    Defendant, WALGREENS, was negligent in one or more of the following ways:

    a.    Placed an unsafe product into the stream of commerce;

    b.    Failed to warn of the dangers associated with the use of ReNu when it knew or should have known of such dangers;

    c.    Negligently failed to timely pull ReNu from its store shelves and suspend sales, when it knew or should have known of the risk of *Fusarium* infection associated with the product; and,

    d.    Was otherwise negligent in its failure to warn.

23.    Defendant, WALGREENS, knew or should have known that consumers such as Plaintiff could foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

24.    Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

25.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, WALGREENS, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

## COUNT VII
### (Gomez v. Walgreens – Strict Products Liability)

1-15.    Plaintiff hereby restates and realleges Paragraphs 1-15 of the General Allegations as Paragraphs 1-15 of Count VII, as though fully stated herein.

16.    That, at all times relevant herein, the Defendant, WALGREENS, had a duty to supply, distribute, and/or sell ReNu so that it was neither defective, nor unreasonably dangerous when put to a foreseeable use for which it was designed, manufactured, distributed or sold.

17.    That the ReNu supplied by Defendant, WALGREENS, was defective in

manufacture or construction in that, when it left the control of Defendant, WALGREENS, it deviated in a material way from BAUSCH & LOMB's manufacturing performance standards and it differed from otherwise identical products manufactured to the same design formula.

18.    That the ReNu supplied by Defendant, WALGREENS, was defective in design in that, when it left the control of Defendants, the foreseeable risks exceeded the benefits associated with the design and formulation.

19.    That the ReNu supplied by Defendant, WALGREENS, was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

20.    That ReNu was defective and unreasonably dangerous when it left the possession of Defendant, WALGREENS, in that it contained warnings that were insufficient to warn consumers, including Plaintiff, of the dangerous risks and reactions associated with the product, notwithstanding Defendant's knowledge of such risks and reactions.

21.    That the aforementioned defects existed when Defendant, WALGREENS, placed ReNu into the stream of commerce and sold, distributed, and/or supplied the ReNu to Plaintiff.

22.    That Defendant, WALGREENS, sold, distributed, and/or supplied ReNu to Plaintiff, MARIA DEL ROSARIO GOMEZ.

23.    By engaging in the aforesaid conduct, Defendant, WALGREENS, individually is strictly liable to Plaintiff, MARIA DEL ROSARIO GOMEZ.

24.    Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

25.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered severe and permanent physical injuries and has endured substantial pain and suffering.

She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally, economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiff prays for judgment against Defendant, WALGREENS, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this court deems fair and just.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By:    //s// Antonio M. Romanucci

Antonio M. Romanucci
Vickie Voukidis-Blum
**ROMANUCCI & BLANDIN**
33 North La Salle Street
Suite 2000
Chicago, Illinois 60602
312/458-1000
312/458-1004 *facsimile*